**CROWN COACH CO. v. UNITED STATES (INTERSTATE COMMERCE COMMISSION et al., Intervenors).**

No. 111.

District Court, W. D. Missouri, S. W. Division.

March 16, 1942.

L. M. Crouch (of Crouch & Crouch), of Harrisonville, Mo. (D. C. Chastain, of Kansas City, Mo., of counsel), for plaintiff Crown Coach.

Thurman Arnold, Asst. Atty. Gen., Irvin L. Stephenson, Sp. Atty., of Washington, D. C., and Maurice M. Milligan, U. S. Dist. Atty., and Richard H. Musser, Asst. U. S. Dist. Atty., both of Kansas City, Mo., for United States.

Daniel W. Knowlton and Nelson Thomas, both of Washington, D. C., for Interstate Commerce Commission.

D. D. McDonald, of Jefferson City, Mo., for Mo-Ark Lines, Inc.

Before RIDDICK, Circuit Judge, REEVES and OTIS, District Judges.

REEVES, District Judge.

This is a suit to annul an order of the Interstate Commerce Commission. Jurisdiction is invoked by subdivision 28, section 41, Title 28 U.S.C.A. In compliance with the mandatory provisions of section 47, Title 28 U.S.C.A., a three-judge court was constituted and the case has been heard by such court. The order the plaintiff seeks to annul was one dismissing its complaint against Mo-Ark Coach Lines, Inc.

548

By its complaint before the Interstate Commerce Commission the plaintiff sought restoration of a joint through route over the lines of the respective parties from Kansas City to Springfield and points beyond. Both the plaintiff and the intervening defendant, Mo-Ark Coach Lines, Inc., are motor common carriers over different routes between Kansas City and Springfield and points beyond. Plaintiff sought to have the Mo-Ark Coach Lines join again in through routes over the complainant's line from Kansas City to Springfield on traffic originating at or beyond Kansas City to destinations on Mo-Ark Coach Lines, Inc., beyond Springfield.

It appears from the evidence that, prior to the enactment of the National Motor Carrier Act in 1935, 49 U.S.C.A. § 301 et seq., the two carriers had an operating arrangement whereby a joint through route was established between Kansas City and Springfield and points beyond. Thereby traffic originating at or beyond Kansas City was given a through route privilege over plaintiff's lines to Springfield and thence over Mo-Ark Coach Lines, Inc., to destinations beyond Springfield.

Pursuant to requirements of the Motor Carrier Act, such a joint through route schedule was filed to become effective April 1, 1936. Apparently from the record this was not a harmonious working arrangement and Mo-Ark Coach Lines, Inc., shortly thereafter filed a modification or change, the effect of which was to cancel such joint through route. This change became effective August 26, 1936. Since that time the joint through route arrangement was not authorized.

On June 2, 1939 plaintiff filed its complaint against Mo-Ark Coach Lines, Inc., before the Interstate Commerce Commission for the reestablishment of the joint through route. Upon a hearing the Commission denied the request and ordered a dismissal of plaintiff's petition. It is this order which forms a predicate for plaintiff's action here.

It is alleged by the plaintiff that the Commission erroneously decided that there was no evidence to support the desirability of a joint through route; that upon the evidence the Commission could not properly have found that the cancellation of a joint through route was reasonable; that upon the evidence the joint through route was in the public interest; and that the Commission erred in holding that the

burden was upon the plaintiff to show convenience and necessity for restoring the joint through route. It was the further contention of the plaintiff that the proceeding merely challenged the former procedure whereby the Mo-Ark Coach Lines, Inc. withdrew from the joint through route arrangement. It was insisted by the plaintiff that the burden was upon the Mo-Ark Coach Lines, Inc. to effect a change in the schedule and that it had not carried such burden.

These will be noticed with other contentions urged by the plaintiff.

█ 1. Under the motor carrier act it is the duty of a common carrier to file schedules of tariffs, including statements of facilities for the transportation of passengers in interstate commerce in connection with its operations. Such schedules are not prescribed by the Interstate Commerce Commission, but may be altered or modified upon complaint or at the instance of the Commission. Moreover, it is the right of a common carrier by motor vehicles at any time to file schedules showing changes in its fares, charges, rules, practices and facilities for the transportation of passengers in interstate commerce. When that is done, the Commission is authorized and empowered on complaint of any interested party, or upon its own initiative, to enter upon a hearing concerning the lawfulness or propriety of such change of rate. This provision, however, is not effective as against schedules filed on or before July 31, 1938.

It is provided by subdivision (g), Section 316, 49 U.S.C.A., that:

"At any hearing involving a change in a rate, fare, charge, or classification, or in a rule, regulation, or practice, the burden of proof shall be upon the carrier to show that the proposed changed rate, fare, charge, classification, rule, regulation, or practice is just and reasonable."

It will be observed from the foregoing that the intervenor, Mo-Ark Coach Lines, Inc., filed its schedule altering or withdrawing from the joint through route arrangement in the year 1936 and that same became effective August 26, 1936. It had a right to file such schedule upon compliance with the law, and no burden rested upon it to establish the reasonableness, desirability or the necessity for the change. It is the duty of the Interstate Commerce Commission to receive and per-

mit the filing of schedules or changes therein. It is empowered, however, either upon its own initiative or upon complaint of an interested party, to grant a hearing with respect to the lawfulness of any rate, practice, classification, rule or regulation inserted in such schedule. It follows, therefore, that the intervenor did what it had a right to do under the law and, in the absence of complaint or affirmative action by the Interstate Commerce Commission, its action became a closed matter.

2. By its complaint, filed June 2, 1939, the plaintiff set forth the restrictions of the amended schedule filed by the intervenor and effective August 26, 1936, and then appended the following prayer:

"Wherefore complainant prays that the Commission investigate said restriction in said tariff and that appropriate order be made thereon compelling defendants to withdraw said restriction, etc."

Upon this complaint the Commission granted a hearing for the reason that it is provided by section 316, subparagraph (a) that:

"It shall be the duty of every common carrier of passengers by motor vehicle to establish reasonable through routes with other such common carriers and to provide safe and adequate service, equipment, and facilities for the transportation of passengers in interstate or foreign commerce; * * *."

The Commission made from the evidence before it the following findings of fact:

(a) "Complainant operates so-called supercoaches from Kansas City, but these coaches do not go through to Springfield. Passengers for Springfield are required to change to smaller busses at Lamar. Defendant's busses are operated from Kansas City to Springfield without transfer of passengers. The highways traversed from Kansas City to Springfield over both Crown and Mo-Ark's routes are good. The highway distances from Kansas City to Springfield over the Crown route through Lamar are approximately 195 miles and over the Mo-Ark route through Warrensburg approximately 180 miles."

(b) "Some passengers prefer the Lamar route because they like to ride in Crown's supercoaches. On the other hand, the record clearly shows that Mo-Ark's busses, though smaller than supercoaches, are modern and comfortable. There is no question concerning the adequacy of defendant's service."

(c) "Crown operates two schedules from Kansas City to Springfield. Busses leaving Kansas City at 2 p. m. and 8:10 a. m. arrive at Springfield at 7:55 p. m. and 1:55 p. m., respectively. The Mo-Ark busses leave Springfield at 7:15 a. m. and 1:30 p. m. for Memphis and intermediate points. Hence, passengers arriving at Springfield over complainant's route are required to wait until 7:15 a. m. the following morning to make connections for Memphis. Defendant also has busses leaving Springfield at 4 p. m. for Mammoth Spring, Ark., and at 8:45 p. m. for West Plains, Mo. Mo-Ark's schedules from Kansas City to Springfield permit connection with its Springfield-Memphis trips above-described within approximately 30 or 90 minutes."

(d) "The numbers of passengers who were transported over Crown's line from Kansas City to Springfield and there delivered to Mo-Ark for destinations on its line beyond Springfield in interstate commerce were as follows: 2 passengers in 1933, 2 in 1934, 18 in 1935, 73 in 1936, 14 in 1937, 7 in 1938, and 6 in 1939. Of the 22 passengers delivered by Crown to Mo-Ark in 1933, 1934, and 1935, 18 originated at points beyond Kansas City on connecting lines and 4 originated at Kansas City; and of the 51 passengers delivered by complainant to defendant at Springfield during January, May, August, September and October, 1936, 45 passengers originated beyond Kansas City and 6 at Kansas City. From these data it is fair to conclude that only a small percentage of the passengers transported by Crown from Kansas City to Springfield for points on Mo-Ark's line was originated by complainant and that the much larger percentage of the traffic was transported by Crown as an intermediate carrier and could have been turned over to Mo-Ark at Kansas City for transportation to destinations south and east of Springfield."

(e) "There is no evidence of record which shows any demand by passengers for stop-overs at points on complainant's line between Kansas City and Springfield when their destinations are points on defendant's line south of Springfield. Similarly, there is no evidence that any of the passengers who were transported by Crown to Springfield for Mo-Ark points stopped over at points on complainant's line."

550

(f) "Mo-Ark's and Crown's terminals at Kansas City are approximately 1 block apart and at Springfield they are approximately 5 blocks apart. The terminals of both carriers at Kansas City and Springfield are also used by other motor carriers."

The Commission, upon the foregoing findings of fact, amply supported by the record, concluded as follows:

(1) "The record does not warrant a finding that the through route sought is required by the public interest * * * We find that the establishment of the through route sought is not shown to be necessary or desirable in the public interest."

(2) "Mo-Ark has no duty under section 216(a), section 316(a), Title 49 U.S.C.A., to establish a through route merely to enable another motor carrier to share in transportation which it can perform."

3. The restriction filed by the intervenor was effective from and after August 26, 1936. The plaintiff is now seeking to alter or change a practice established for a period of approximately three years. It follows that the burden was upon the plaintiff "to show that the proposed * * * practice is just and reasonable."

4. The Commission heard the evidence and made the findings set out above. Not only did the plaintiff fail to carry its burden, but it appears from the evidence, and as found by the Commission, that the present restrictive arrangement is necessary and desirable in the public interest. As was said in Merchants' Warehouse Co. v. United States, 283 U.S. 501, loc.cit. 508, 51 S.Ct. 505, 508, 75 L.Ed. 1227:

"The credibility of witnesses and weight of evidence are for the Commission and not for the courts, *and its findings will not be reviewed here if supported by evidence.*"

To the same effect, Rochester Telephone Co. v. United States, 307 U.S. 125, loc.cit. 146, 59 S.Ct. 754, 83 L.Ed. 1147; Miss. Valley Barge Line Co. v. United States, 292 U.S. 282, loc.cit. 286, 287, 54 S.Ct. 692, 78 L.Ed. 1260; Swayne & Hoyt, Ltd., v. United States, 300 U.S. 297, 303, 304, 57 S.Ct. 478, 81 L.Ed. 659.

The Commission was well supported by the evidence in refusing to require the establishment of the through route as prayed by plaintiff.

It follows that plaintiff's petition ought to be dismissed.