**GREENSBORO-HIGH POINT AIRPORT AUTHORITY, Petitioner,**

**v.**

**CIVIL AERONAUTICS BOARD, Respondent,**

**Eastern Air Lines, Inc., and Piedmont Aviation, Inc., Intervenors.**

**No. 12608.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 11, 1955.

Decided March 22, 1956.

Mr. Albert F. Beitel, Washington, D. C., for petitioner.

Mr. Gerald F. Krassa, Atty., Civil Aeronautics Board, with whom Messrs. Franklin M. Stone, Gen. Counsel, Civil Aeronautics Board, John H. Wanner, Associate Gen. Counsel, Civil Aeronautics

Wilbur K. Miller, Circuit Judge, dissented in part.

Board, and O. D. Ozment, Chief, Litigation and Research Division, Civil Aeronautics Board, were on the brief, for respondent.

Mr. Charles H. Weston, Atty., Dept. of Justice, also entered an appearance for respondent.

Mr. W. Glen Harlan, Atlanta, Ga., with whom Mr. E. Smythe Gambrell, Atlanta, Ga., was on the brief, for intervenor Eastern Air Lines, Inc.

Mr. Llewellyn C. Thomas, Washington, D. C., also entered an appearance for intervenor Eastern Air Lines, Inc.

Messrs. Cecil A. Beasley, Jr., Eugene B. Thomas, Jr., and Dyer J. Taylor, Washington, D. C., entered appearances for intervenor Piedmont Aviation, Inc.

Before EDGERTON, Chief Judge, and WILBUR K. MILLER and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

This is a petition to review two orders of the Civil Aeronautics Board. The petitioner airport authority alleges that it was not accorded a fair hearing; that the Board's findings were inadequate; and that the Board's orders unfairly discriminated against it.

On December 11, 1953, the Civil Aeronautics Board gave public notice of a proposed hearing, the pertinent portion of the notice reading as follows:

"Without limiting the scope of the issues involved in this proceeding, particular attention will be directed to the following matters and questions:

"1. Whether the public convenience and necessity require air transport service between Charleston, W. Va., and Columbus, Ohio, and whether the certificates of public convenience and necessity held by Eastern Air Lines, Inc., and/or Piedmont Aviation, Inc., and/or Lake Central Airlines, Inc., should be amended so as to authorize such service.

"2. Whether one or more of the following route revisions should be authorized in connection with providing air transport service between Charleston, W. Va., and Columbus, Ohio:

"(a) Amendment of Eastern's route No. 6 so as to add thereto Columbus and Toledo, Ohio, as intermediate points between Charleston, W. Va., and Detroit, Mich., as proposed by said carrier in its application in Docket No. 4096.

"(b) Amendment of Piedmont's route No. 87 so as to extend said route from Charleston, W. Va., to Columbus, Ohio, via the intermediate point Parkersburg, W. Va.-Marietta, Ohio, as proposed by said carrier in its application in Docket No. 6347.

\* \* \* \* \* \*

"3. Whether the applicants are fit, willing and able properly to perform the proposed air transportation and to conform to the provisions of the Act and the rules, regulations and requirements of the Board thereunder."

A number of cities in the eastern half of the United States moved to intervene in the proceedings: some of these applications were granted and some denied. The petitioner now before us, the Greensboro-High Point Airport Authority [of North Carolina] ("Greensboro"), did not at this time move to intervene. Hearings were held, and at their conclusion the trial examiner rendered an initial decision awarding to Eastern Air Lines a new route-segment extending from Charlotte, North Carolina, to Detroit via Columbus and Toledo, and awarding to Piedmont Aviation a route-extension running from Charleston, West Virginia, to Columbus. At this point Greensboro requested the Board for leave to intervene, saying in part:

"The instant case involves an application by Eastern Air Lines (Eastern) to amend its route No. 6

to authorize service to Charleston, W. Va. and Columbus, Ohio, and an application by Piedmont Aviation to extend its route No. 87 from Charleston, W. Va. to Parkersburg, W. Va. and Columbus, Ohio. If granted, such applications would provide new and additional air service at Greensboro-High Point.

"Petitioner has an interest in the manner and extent to which the operations proposed in this proceeding will affect existing services and schedules pertaining to petitioner.

\* \* \* \* \* \*

"To permit petitioner to intervene will not unduly broaden the issues or delay the proceeding, but on the contrary should be advantageous to the Board by giving the Board an opportunity to hear the case of Greensboro-High Point on the issue of public interest.

\* \* \* \* \* \*

"Instead of finding that Eastern's application should be granted in order to provide a needed service, the Examiner has recommended that route No. 6 be split at Charlotte and that Eastern provide service to Columbus and Toledo, Ohio and Detroit, Mich. direct from Charlotte, N. C., instead of from Charleston, W. Va. (Initial Decision, p. 60) This attempt to split Eastern's route No. 6 at Charlotte has serious economic implications for Greensboro-High Point. Eastern has already made Charlotte an important transfer point on its routes and operates more and better schedules through Charlotte than through Greensboro-High Point. The quality and quantity of air service provided at Charlotte, as compared with that provided at Greensboro-High Point, results in discrimination against Greensboro-High Point. Such discrimination is expressly forbidden by Sec. 404 of the Civil Aeronautics Act [49 U.S.C.A. § 484].

\* \* \* \* \* \*

"The total air traffic of record [1] between Toledo and Charlotte amounted to 105 passengers; between Toledo and Greensboro-High Point and the neighboring city of Winston-Salem, the traffic amounted to 128 passengers. There were 212 passengers between Charlotte and Columbus, compared to 240 between Columbus and Greensboro-High Point and Winston-Salem during the same period.

"In his initial decision, the Examiner failed to consider any of this data, and did not discuss the effect of splitting route No. 6. The Greensboro - High Point - Winston - Salem area is economically a more important area in North Carolina than the Charlotte area; but the Examiner fails to consider this fact in his decision."

The Board granted leave to intervene and allowed Greensboro to argue its case. In due course thereafter the Board approved the substance of the examiner's report and granted appropriate certificates to Eastern and Piedmont. Greensboro then filed a request for reconsideration and a rehearing, alleging, among other things, that the Board did not give proper notice to Greensboro, that its decision did not contain findings to support the rejection of Greensboro's arguments and that, the Board's decision discriminated against Greensboro. It asked the Board to split Eastern's route at Greensboro, or at a point north thereof, rather than at Charlotte. In the alternative, if that relief were denied, Greensboro asked that the Board reopen the record "for the purpose of hearing petitioner upon the issues raised in this petition."

The Board denied Greensboro's petition for reconsideration, stating:

"Apart from certain charges of legal error, the petition of the

---

1. "As shown by the Board's survey months of March and September from 1940 to 1953, inclusive, but excluding the unpublished 1951 figures."

Greensboro-High Point Airport Authority is repetitious of matters previously advanced to the Board, and rejected by the Board's original decision. The petition does not demonstrate any error by the Board in this regard. Nor does it establish any legal deficiency in the Board's procedure. Although the petition claims inadequate notice of the issues, and inadequate findings to support the Board's decision, we find no merit in these contentions. Insofar as petitioner seeks further hearing, there is no satisfactory showing as to what facts would be adduced to amplify the record in any material respect."

Greensboro now petitions this court for review of the Commission's orders.[1] Its contentions here are that (1) it was denied a fair hearing because it was not given adequate notice and because the Board failed to reopen the record, and (2) the Board failed to make adequate findings showing the reasons for its rejection of Greensboro's contentions.

The Board argues that Greensboro did in fact receive adequate notice of the proposed hearings. It says that the action recommended by the examiner and adopted by the Board was one of the possible solutions to the transportation problem outlined in the notice of hearing and that Greensboro should have recognized this. The intervenor Eastern also argues that the route between Columbus and Charlotte was one of the routes impliedly requested in Eastern's original petition for additional service, and that by selecting that route and granting it to Eastern the Board in fact gave Eastern only a portion of the relief it had originally asked for. Accordingly, it says, this was within the scope of the notice of hearing actually issued.

■ We need not pass upon these contentions because we think that in view of all the circumstances Greensboro is not in a position to challenge the notice of hearing. When the examiner's initial decision was announced Greensboro had ample notice from its terms of the effect of the proposed action. At that stage it could have moved for a reopening of the hearings so as to permit it to put in evidence. It did not do so. Instead, it merely asked leave to intervene, and in fact advised the Board that permission to intervene "will not unduly broaden the issues or delay the proceeding." The Board granted the petition and Greensboro presented its arguments orally. In doing so, however, it did not allege any lack of notice or ask leave to present additional evidence. Its assumption throughout was that on the basis of the existing record the Board could and should decide in its favor (namely, by making the split in Eastern's route at Greensboro or some point farther north, rather than at Charlotte). Under these circumstances we think that Greensboro is in no position now to urge that the notice of hearing was inadequate, or that the Board erred when it denied Greensboro's belated effort to reopen the record.

■■ Petitioner also argues that the Board did not make adequate findings with respect to its contentions, as required by Section 1005(f) of the Civil Aeronautics Act, 49 U.S.C.A. § 645(f), and Section 8(b) of the Administrative Procedure Act, 5 U.S.C.A. § 1007(b). Those sections require the Board to set forth in each of its orders "the findings of fact upon which it is based" (Section 1005(f)), and a statement of "findings and conclusions, as well as the reasons or basis therefor, upon all the material issues of fact, law, or discretion presented on the record" (Section 8(b)). Those requirements must, of course, receive a reasonable interpretation, in the light of the circumstances of the individual case. Under Section 10 of the Administrative Procedure Act, the courts are empowered to set aside agency action which is

1. The orders under review are the Board orders of January 17, 1955, granting certificates to Eastern and Piedmont, and its order of March 14, 1955, denying the petition for reconsideration.

"without observance of procedure required by law", but only after taking "due account * * * of the rule of prejudicial error." 5 U.S.C.A. § 1009 (e). The agency's findings must also be sufficiently definite to enable the courts to perform the task of judicial review. Spiegel v. Public Utilities Commission, 96 U.S.App.D.C. 307, 226 F.2d 29, certiorari denied sub nom. Capital Transit Co. v. Spiegel, 1955, 350 U.S. 904, 76 S. St. 182; Beaumont, S. L. & W. Ry. v. United States, 1930, 282 U.S. 74, 86, 51 S.Ct. 1, 75 L.Ed. 221.

In the light of these principles, the question is whether the Board's findings and conclusions in respect of Greensboro's chief contention are adequate and sustainable. That contention is, of course, that Charlotte—a competitor city in the race for new business and increased prosperity—has been unduly favored by the Board, which has discriminated against Greensboro-High Point. A review of the findings of the Examiner reveals no explicit discussion of this issue. The Examiner does say that the new route arrangement will not affect Greensboro "in any appreciable degree," and that Greensboro "will fare better under the Piedmont schedule pattern than under the Eastern pattern." [2] The Board adopted the quoted finding, and added, with regard to Greensboro and other cities similarly situated, "While these cities may not receive the full measure of benefits for which they contend, the air services which they will receive as a result of our decision herein will be a considerable overall improvement over the existing level of such services." These findings, as far as they go, do not seem to be questioned by Greensboro. Certainly, the Board's order does not deprive Greensboro of any service previously enjoyed. Eastern's Route 6 still passes through Greensboro, and the service on it continues to be as adequate as before. The order gives Greensboro additional service by Piedmont, and no complaint is made on that score.

Greensboro's grievance is thus not deprivation of existing service, or even inadequate service, but competitive disadvantage as compared with Charlotte. A claim of this sort obviously appeals less to equity than a claim that administrative action has resulted in some actual loss to the complainant or deprivation of benefits theretofore enjoyed by it. Administrative discrimination between localities may often be necessary, often be justified. Our American system of free enterprise tends to adjust many of these problems: good business management is prompt to supply service whenever and wherever demand appears. In regulated industries, this urge for expansion may be lessened or slowed down, but it still remains. In the instant case, Eastern and Piedmont will presumably meet any demands for service which Greensboro generates. If they do not, Greensboro can raise the matter in a complaint lodged with the Board.

Despite these considerations, the fact remains that Greensboro has not received a plain answer to its charge of discrimination. We think it is entitled to one. The issue was flatly raised, and

2. He said: "The extension of Eastern's Route No. 6 from Charlotte would eliminate Winston-Salem, Greensboro-High Point, and Roanoke (and, of course, Charleston) from the new alternative segment. These cities would not be affected in any appreciable degree by such an elimination. They are already in a position to be served by Eastern on the other alternate segments to Detroit and since they are also on Piedmont's Route No. 87 their access to Columbus would be accomplished. In fact they will fare better under the Piedmont's schedule pattern than under the Eastern Pattern. The five daily schedules in the Eastern plan are so arranged that each of these three cities is served by one flight only in each direction. Piedmont will provide Columbus service on two schedules per day each way for Greensboro-High Point and Winston-Salem and on four for Roanoke. They would, of course, be deprived of the one-carrier service to Toledo, but this would be counterbalanced by the Parkersburg-Marietta service that Piedmont would provide and a greatly improved connecting service."

was relevant to the Board's ultimate decision as to what the public convenience and necessity required. The Board's failure to supply an answer was not harmless error, but prejudiced Greensboro's position in its efforts to obtain judicial review. We think the Board should now make appropriate findings of fact on the issue, and state "the reasons or basis" for its conclusion. In its discretion, it may do this on the present record, or permit additional testimony and argument.

For the reasons given, the order of the Board will be vacated, and the cause remanded for further proceedings not inconsistent with this opinion. To avoid disruption of service, the Board may permit existing service and route arrangements to remain in effect pending further proceedings, which should be conducted "with all deliberate speed." Addison v. Holly Hill Co., 1944, 322 U.S. 607, 619, 64 S.Ct. 1215, 1222, 88 L.Ed. 1488; American Broadcasting Co. v. Federal Communications Commission, 1951, 89 U.S.App.D.C. 298, 191 F.2d 492; Dolcin Corp. v. Federal Trade Commission, 1954, 94 U.S.App.D.C. 247, 219 F. 2d 742, petition for rehearing en banc denied, ibid. (1955), certiorari denied, 1955, 348 U.S. 981, 75 S.Ct. 571, 99 L. Ed. 763; 49 U.S.C.A. § 646(d).

So ordered.

WILBUR K. MILLER, Circuit Judge (dissenting in part and concurring in part).

The Civil Aeronautics Board gave notice of a hearing to determine "[w]hether the public convenience and necessity require air transport service between Charleston, W. Va., and Columbus, Ohio * * *"; whether Eastern's route No. 6 should be amended so as to add thereto Columbus and Toledo, Ohio, as intermediate points between Charleston, West Virginia, and Detroit, Michigan; and whether Piedmont's route No. 87 should be amended so as to extend it from Charleston, West Virginia, to Columbus, Ohio. Instead of adhering to this notice, the examiner in his initial decision found that public convenience and necessity required amendment of Eastern's route No. 6 so as to authorize service beyond the intermediate point, Charlotte, North Carolina, to the terminal point, Detroit, Michigan. The effect of this was to split Eastern's route No. 6 at Charlotte, North Carolina, which is south of Greensboro-High Point and, of course, far south of Charleston, West Virginia. The harmful effect on Greensboro-High Point is apparent.

Upon learning of the initial decision, Greensboro-High Point petitioned for leave to intervene and the privilege was granted. The record had already been made without the participation of Greensboro-High Point, which was granted ten minutes for oral argument. The Board adopted the examiner's initial decision, whereupon Greensboro-High Point petitioned for reconsideration and for rehearing so that it might introduce evidence as to the discrimination it would suffer because of the order. The Board denied the petition for reconsideration, stating, "[T]here is no satisfactory showing as to what facts would be adduced to amplify the record in any material respect." This seems to me to be an unwarranted statement.

The action of the Board in this case was, in my opinion, a plain violation of §§ 5(a) and 8(b) of the Administrative Procedure Act, 5 U.S.C.A. §§ 1004(a) and 1007(b). A more complete departure from the notice of hearing would be difficult to imagine. I think Greensboro-High Point did not receive a fair hearing. For these reasons I dissent from the opinion of the majority, except that I concur in that portion which gives Greensboro-High Point a small measure of relief and so affords it a part of a fair hearing.