**SAFEWAY TRAILS, INC., Plaintiff,**

v.

**INTERSTATE COMMERCE COMMIS-
SION and United States of
America, Defendants,
and
Baltimore and Annapolis Railroad Com-
pany, Inc., Defendant-Intervenor.**

**Civ. A. No. 1061–59.**

United States District Court
District of Columbia.

June 17, 1959.

Maxwell A. Howell, Washington, D. C., Charles B. McInnis, Washington, D. C., on the brief, for plaintiff.

Arthur J. Cerra, Asst. Gen. Counsel, I. C. C., Washington, D. C., with whom Robert A. Bicks, Acting Asst. Atty. Gen., Oliver Gasch, U. S. Atty., Robert W. Ginnane, Gen. Counsel, I. C. C., and James H. Durkin, Atty., Dept. of Justice, Washington, D. C., were on the brief, for defendants.

Frank B. Hand, Jr., Washington, D. C., for defendant-intervenor.

Before WASHINGTON, Circuit Judge, and PINE and HART, District Judges, holding a statutory three-judge court.

WASHINGTON, Circuit Judge.

This is a suit to set aside an order of the Interstate Commerce Commission, dated March 2, 1959, and served March 13, 1959, granting an application by the Baltimore and Annapolis Railroad Company for a certificate of public convenience and necessity, pursuant to Section 207(a) of the Interstate Commerce Act, added by 49 Stat. 551 (1935), 49 U.S.C.A. § 307(a), to transport passengers

in interstate commerce by motor vehicle between certain points in Maryland and the District of Columbia.[1] The route starts at Glen Burnie, Maryland, and includes Friendship International Airport, Fort Meade, and the District Training School.

Safeway, the complainant, provides all existing bus service from Washington, D. C., to the National Security Agency, located on the grounds of Fort Meade, and to Fort Meade itself. Its first claim is that the Commission, in awarding the certificate to the Railroad, failed to make a basic finding that the existing service to these points is inadequate. Its further claim is that there was insufficient evidence on the whole record to support the Commission's finding of inadequate service to the District Training School, which Safeway also serves. Finally, although Safeway does not provide service to Friendship International Airport, it claims that the existing service by limousine to Friendship is adequate, and that the Commission made no finding to the contrary.

██ The needs for service to the mentioned points were all the subject of testimony and were carefully considered by the Commission. Certainly, Safeway has no grievance concerning the National Security Agency, since it is clear that the Commission specifically declined to permit the Railroad to service the Agency. As to the other points served, we think

that the Commission's basic finding that the existing service "between Washington and Glen Burnie, including that to the District Training School, is patently inadequate,"[2] when read with the reports of Joint Board No. 120 and Division 1 of the Commission, see 76 M.C.C. 727 (1958), is sufficient to comply with the requirements of law, and is based on ample evidence.

██ Safeway further urges that this court set aside the order because the Commission acted contrary to the mandate of Section 8(b) of the Administrative Procedure Act, 60 Stat. 242 (1946), 5 U.S.C.A. § 1007(b), in failing to make specific findings as to the competitive effect the grant of the certificate would have on Safeway. There is no indication from the record before us, however, that the petitioner's present demand for specific findings on this subject was ever urged before the Joint Board, the Division, or the Commission.[3] This court is therefore not required to consider the issue. Further, the need for specific and detailed findings must depend on the nature of the record before the court for review and the clarity with which the Commission presents the factual basis for its ultimate conclusions. See Capital Transit Co. v. United States, D.C.D.C.1951, 97 F.Supp. 614, 621. Compare United States v. Pierce Auto Freight Lines, Inc., 1946, 327 U.S. 515, 531–532, 66 S.Ct. 687, 90 L.Ed. 821, with Clarke v. United States, D.C.D.C.

1. ICC Docket No. MC–102299.

2. The Commission went on to state that— "[P]assengers on public vehicles are subjected to inconvenient, time-consuming, and sometimes expensive interchanges, and prospective passengers are discouraged from using the existing public transportation services. On the other hand, a rather widespread desire for the proposed service exists."

3. The Commission in its opinion enumerates only the following points of contention raised by Safeway and Greyhound in their petitions for reconsideration:
"In their respective petitions Safeway and Greyhound contend that the Division

erred (1) in finding a public need for the proposed service, (2) in finding present interchange arrangements unsatisfactory, (3) in finding that applicant is not in the position of a new entrant into a competitive field, (4) in finding that a need has been shown for the proposed operation, incidental charter rights notwithstanding, (5) in failing to find that deficiencies in the existing service can be eliminated by joint through-service with Safeway and applicant or by a connecting line service with Greyhound and applicant, (6) in failing to find that the proposed service would be uneconomical, and (7) in disregarding the resulting competitive effect on the charter and special operations of carriers in the Washington area."

1951, 101 F.Supp. 587, 590–591. In the present case, the opinions of the Joint Board, Division 1, and the Commission, when read with the ultimate decision that the grant was required by the public convenience and necessity, cf. United States v. Pierce Auto Freight Lines, Inc., supra, were sufficient to obviate the need for detailed findings as to the competitive effect which the grant of the certificate would have, at least in the absence of a showing that such findings were requested and refused, to the prejudice of the complainant. Cf. Greensboro-High Point Airport Authority v. Civil Aeronautics Board, 1956, 97 U.S.App.D.C. 358, 231 F.2d 517.

■ As a third point, Safeway contends that the Commission erred in not ordering the Railroad to accede to Safeway's request, made in the course of the proceeding, that a joint through route be established from Glen Burnie to Washington. Safeway contends that Section 216(a) of the Act, added by 49 Stat. 558 (1935), 49 U.S.C.A. § 316(a), imposes a duty on "every common carrier of passengers by motor vehicle to establish reasonable through routes with other such common carriers * * *." But such a duty is not absolute, see Crown Coach Co. v. United States, D.C. W.D.Mo.1942, 44 F.Supp. 547, 550, and is subject at least to a determination of what is reasonable under the circum-

stances, see Wolzinger v. Burlington Transportation Co., 1943, 43 M.C.C. 51, 53. The appropriate and usual procedure to bring about the establishment of such a through route is by a complaint filed under Section 216(e) of the Act, added by 49 Stat. 558 (1935), 49 U.S.C.A. § 316(e).[4] But in the present case no complaint was filed under Section 216(e); rather Safeway's request was raised as a defense in the Section 207(a) proceeding in order to defeat the grant of the certificate to the Railroad. The Commission has never required the institution of through routes under such circumstances. We think it was well within its authority and discretion in declining to consider Safeway's request in detail, and in granting the operating authority to the Railroad to establish its own service.[5]

■ Safeway's final objection relates to the Commission's failure to consider the harmful competition to the charter and other special bus operations already existing in the Washington area which would follow from the present grant. The Commission takes the position that chartering privileges are incidental to a grant of regular route authority under Section 207(a) and arise automatically under Section 208(c) of the Interstate Commerce Act, added by 49 Stat. 552 (1935), 49 U.S.C.A. § 308(c).[6] Safeway contends that the Commission should

4. Section 216(e) provides in part as follows:
"[T]he Commission shall, whenever deemed by it to be necessary or desirable in the public interest, after hearing, upon complaint or upon its own initiative without a complaint, establish through routes and joint rates, fares, charges, regulations, or practices, applicable to the transportation of passengers by common carriers by motor vehicle, or the maxima or minima, or the maxima and minima, to be charged, and the terms and conditions under which such through routes shall be operated * * *."

5. Safeway itself recognizes the difficulties involved in raising a through route proposal in a Section 207(a) proceeding. In its brief it states:
"Under the complaint procedure of Section 216(e) of the Act, 49 U.S.C.A. § 316

(e), the complaining carrier which seeks to compel through routing with a connecting carrier must sustain the burden of establishing public convenience and necessity. Obviously the complaint procedure would be out of place in the instant situation where it is the Railroad which argues for the existence of public convenience and necessity while Safeway, on the other hand, argues against their existence."

6. Section 208(c) provides:
"Any common carrier by motor vehicle transporting passengers under a certificate issued under this chapter may transport in interstate or foreign commerce to any place special or chartered parties under such rules and regulations as the Commission shall have prescribed."

have restricted the grant to the Railroad so as to bar it from the charter business. Although it is true that Section 208(a) of the Act, added by 49 Stat. 552, 49 U.S.C.A. § 308(a), allows the Commission to attach "to the exercise of the privileges granted by the certificate such reasonable terms, conditions, and limitations as the public convenience and necessity may from time to time require," the fact remains that, as early as 1937, Section 208(c) was interpreted to be a mandatory provision granting the Commission no authority to place any limitation in a certificate which would restrict charter privileges. Peninsula Transit Corporation Common Carrier Application, 1 M.C.C. 440, 442 (1937). In the 1941 Regulations Governing Special or Chartered Party Service, 29 M.C.C. 25, 46, the Commission reaffirmed that "Section 208(c) * * * confers an additional right, *without proof, and which is not severable*, to carriers operating over a regular route or routes and between fixed termini * * *." (Emphasis added.) The Commission also adhered to this interpretation in the Baltimore & A. R. R. Extension—Fort George G. Meade, 1954, 63 M.C.C. 357, 366, as well as in the present case. Thus, for close to a quarter century, the Commission had consistently interpreted Section 208(c) as a mandatory provision. This interpretation, the parties inform us, has been made known to the Congress. We are satisfied that the Commission's interpretation is a reasonable one within the scope of the power and discretion conferred by the governing statute. Cf. Gray v. Powell, 1941, 314 U.S. 402, 62 S.Ct. 326, 86 L.Ed. 301. Under the circumstances, this court will not now consider whether some other construction of Section 208(a) would be permissible.

Having reviewed the administrative record, including the recommended report of the Joint Board, the report of Division 1 of the Commission, and the report of the Commission, as well as the testimony taken in the proceedings, we are satisfied that the Commission did not exceed its authority, and had a rational basis for its action, when it granted the Railroad's application. For these reasons, the injunctive relief sought will be denied, and the complaint will be dismissed.