**MICHIGAN CONSOLIDATED GAS COMPANY, a corporation, Petitioner,**

v.

**FEDERAL POWER COMMISSION,**
**Respondent,**

**Panhandle Eastern Pipe Line Company, East Ohio Gas Company, Intervenors.**

**No. 15358.**

United States Court of Appeals
District of Columbia Circuit.

Argued March 7, 1960.

Decided July 11, 1960.

---

Mr. Charles V. Shannon, Washington, D. C., with whom Messrs. Stanley M. Morley and Richard F. Generelly, Washington, D. C., were on the brief, for petitioner.

Mr. Robert L. Russell, Asst. Gen. Counsel, Federal Power Commission, with whom Messrs. Willard W. Gatchell, Gen. Counsel, Federal Power Commission, Howard E. Wahrenbrock, Sol., Federal Power Commission, and Peter H. Schiff, Atty., Federal Power Commission, were on the brief, for respondent.

Mr. Raymond N. Shibley, Washington, D. C., with whom Mr. G. R. Redding, Indianapolis, Ind., was on the brief, for intervenor Panhandle Eastern Pipe Line Co.

Mr. George C. Williams, Cleveland, Ohio, of the bar of the Supreme Court of Ohio, pro hac vice, by special leave of court, Washington, D. C., with whom Messrs. Norman A. Flaningam and Melvin Richter, Washington, D. C., were on the brief, for intervenor East Ohio Gas Co.

Before BAZELON, WASHINGTON and BURGER, Circuit Judges.

BAZELON, Circuit Judge.

This case is an adjunct to Michigan Consolidated Gas Co. v. Federal Power Comm., No. 14975, 108 U.S.App.D.C. 409, 283 F.2d 204, decided April 29, 1960. There we set aside orders of the Commission authorizing Panhandle Eastern Pipe Line Company ("Panhandle") to abandon its deliveries of 127,000 thousand cubic feet ("Mcf") of natural gas per day to Michigan Consolidated Gas Company ("Michigan Consolidated"). Michigan Consolidated brought the instant proceedings to review a subsequent order of the Commission approving Panhandle's proposal to distribute 157,000 Mcf of gas among its resale (utility) customers. The great bulk of this 157,000 Mcf (i. e., 127,000 Mcf) became available to Panhandle as a result of the abandonment. The remaining 30,000 Mcf were made available by an expansion of Panhandle's transmission facilities.

The Commission held a consolidated hearing, from which Michigan Consolidated was excluded, concerning the approval of that expansion and the proposed distribution of the combined 157,-000 Mcf. The order here under review allocated the full 157,000 Mcf to resale customers having relatively low space-heating saturations (i. e., relatively great need for the gas) [1] during the five months of peak demand—November through March. During off-peak periods, most of the 30,000 Mcf made available by the expansion was allocated to East Ohio Gas Company, an intervenor here. East Ohio, which has a relatively high saturation and an alternate source of supply,[2] got none of the 157,000 Mcf for winter use, and none of the "abandonment gas" (i. e., the 127,000 Mcf) for summer use. We will treat separately the issues raised with respect to the 127,-000 Mcf and the 30,000 Mcf.

*1. The 127,000 Mcf:* Both Michigan Consolidated and the Commission agreed that our opinion in No. 14975, setting aside the abandonment orders, requires that the order in this case, insofar as it pertains to the abandonment gas, also be set aside on the grounds that it is moot.[3] Manifestly, the Commission cannot distribute this gas unless and until abandonment is validly accomplished. But the parties do not agree on the proper interim allocation of this gas. The controversy arises because the Commission's abandonment order took effect pending our consideration of No. 14975.[4] Panhandle has thus terminated its deliveries to Michigan Consolidated and is currently delivering the abandonment gas to its resale customers pursuant to the order here under review.

Michigan Consolidated asks us to direct the Commission to require Panhandle to resume delivery to Michigan Consolidated forthwith. The Commis-

---

1. See Michigan Consolidated Gas Co. v. Federal Power Comm., No. 14975, 108 U.S.App.D.C. 409, 283 F.2d 204, at pages 216–219, and note 38, decided April 29, 1960.

2. Id., 108 U.S.App.D.C. 421, 283 F.2d at page 216.

3. Panhandle contends that the order here under review should remain in effect pending final determination of the aban-

donment. Thus its customers will have use of the gas during the interim period, and if abandonment is ultimately approved, a valid order of distribution will already be in effect.

4. See Michigan Consolidated Gas Co. v. Federal Power Comm., 108 U.S.App.D.C. 409, 283 F.2d 204, at page 209, note 3, decided April 29, 1960.

sion opposes this request, without stating its reasons, while Panhandle contends that, even though the instant order is set aside, the Commission should be free to maintain the status quo. Cf. American Broadcasting Co. v. Federal Communications Comm., 1951, 89 U.S. App.D.C. 298, 307, 191 F.2d 492, 502; Greensboro-High Point Airport Authority v. Civil Aeronautics Board, 1956, 97 U.S.App.D.C. 358, 363, 231 F.2d 517, 522.

Ordinarily, Michigan Consolidated would be entitled to retain the gas until it is abandoned by a valid order of the Commission. In allowing the abandonment to take effect, we cautioned the parties that they "acted at their own risk." [5] There is no reason apparent to us why the gas should not be returned to Michigan Consolidated pending final approval of an abandonment. But, as a court we are not equipped to allocate gas between competing parties. We are not aware, for instance, of all the physical, financial and equitable considerations which may affect the interest of those the Act was intended to protect—the ultimate gas consuming public.[6] Hence we cannot assess where the balance of hardship would lie if the gas is, or is not, returned to Michigan Consolidated pending final Commission determination of the abandonment. To afford the Commission an opportunity to make such a determination, we will vacate the Commission's order of distribution and remand the case for this purpose. We think that the Commission will be free, upon such a determination, to take action which includes, but need not be limited to, the following: (1) maintaining the status quo; (2) returning all of the gas to Michigan Consolidated; or (3) ordering some division of the gas between Michigan Con-

solidated and Panhandle, such as the one suggested by Michigan Consolidated's settlement proposal. Michigan Consolidated's legitimate interest in having the Commission reach such determination "with all deliberate speed" [7] is adequately protected by its right to seek mandamus.

It is unnecessary to discuss petitioner's other contentions concerning the designation of a new hearing examiner, and its right to intervene in the hearing insofar as it pertained to the abandonment gas.[8]

2. The 30,000 Mcf: Michigan Consolidated has also sought review of the Commission's orders (1) excluding it from the proceedings concerning this expansion gas, and (2) authorizing the distribution of the gas to East Ohio and Panhandle's other resale customers. (Michigan Consolidated urges no objections to the authorization of this increased capacity.) Only the order denying intervention is properly before us. Public Service Comm. of New York v. Federal Power Comm., No. 15365, —— U.S.App. D.C. ——, —— F.2d —— decided April 28, 1960.

The Commission denied intervention on the grounds that: (1) Michigan Consolidated is not "an 'existing utility customer' of Panhandle," (2) the public interest would not be served since Michigan Consolidated has an adequate supply of gas, and (3) Michigan Consolidated will suffer no immediate economic injury through competition with Panhandle for industrial markets since Panhandle will have to seek Commission approval for any such sale. In its petition for rehearing, Michigan Consolidated asserted that the Commission's ruling

---

5. Ibid.

6. Any hardship Panhandle and its utility customers may sustain is, we think, irrelevant, for they acted "at their own risk" in attaching new loads pending disposition of the appeal in No. 14975. See Michigan Consolidated Gas Co. v. Federal Communications Comm., No. 14975, 108 U.S.App.D.C. 409, 283 F.2d 204, at page 209, note 3, decided April 29, 1960.

7. Addison v. Holly Hill Fruit Products Co., 1944, 322 U.S. 607, 619, 64 S.Ct. 1215, 88 L.Ed. 1488.

8. See Michigan Consolidated Gas Co. v. Federal Power Comm., No. 14975, 108 U.S.App.D.C. 409, 283 F.2d at pages 218, 219, decided April 29, 1960.

was in error because (1) the possibilities of competition entitled it to intervene *as of right,* and (2) intervention was necessary to protect its right of review in No. 14975.

 Since the rehearing petition did not assert that the Commission erred in denying intervention on the ground that Michigan Consolidated was not an existing customer of Panhandle, we cannot consider that claim here. Section 19 of the Natural Gas Act, 52 Stat. 831 (1938), 15 U.S.C.A. § 717r(b); Federal Power Comm. v. Colorado Interstate Gas Co., 1958, 348 U.S. 492, 75 S.Ct. 467, 99 L.Ed. 583.

We think Michigan Consolidated had no right to intervene with respect to the 30,000 Mcf to protect its right of review in No. 14975. The two proceedings were consolidated only for the purpose of administrative convenience. The fact that the gas made available by the expansion was distributed in a manner similar to that made available by the abandonment does not make the expansion gas "part and parcel of the abandonment case" as Michigan Consolidated claims. It may be that Panhandle would have proposed or the Commission approved a different plan of distribution for the 30,000 Mcf had they not believed that the 127,000 Mcf were also available. But even if this were true, and the Commission denies it, we do not think that such a possibility gave Michigan Consolidated the right to intervene. Other customers on the Panhandle system might be aggrieved by the large volume of off-peak gas which East Ohio received under the Commission's order, but absent a request under § 7(a) and (e), 15 U.S. C.A. § 717f(a, e), to compel service, we do not perceive any basis for allowing Michigan Consolidated to intervene.

On the remaining ground for intervention—economic injury through industrial competition—we think Michigan Consolidated fares no better. It did not object to the authorization of this increased capacity and Panhandle did not propose to sell any of this gas to industrial customers. To make such sales at some future time, Panhandle must obtain a certificate of public convenience from the Commission. If the grant of such certificate would adversely affect Michigan Consolidated as a competitor, it will have ample opportunity to intervene at that time. National Coal Ass'n v. Federal Power Comm., 1953, 89 U.S.App. D.C. 135, 191 F.2d 462.

So ordered.