306 F.2d 739
 113 U.S.App.D.C. 132
 BRANIFF AIRWAYS, INC., Petitioner,
v.
CIVIL AERONAUTICS BOARD, Respondent, Continental Air Lines,
Inc., Delta Air Lines, Inc., Eastern Air Lines, Inc.,
National Airlines, Inc., City of Houston, Texas, Houston
Chamber of Commerce, Intervenors.
 No. 16499.
 United States Court of Appeals District of Columbia Circuit.
 Argued March 9, 1962.
Decided May 24, 1962, Petition for Rehearing Denied July 27, 1962.
 
 Mr. B. Howell Hill, Washington, D.C., with whom Mr. Walter D. Hansen, Washington, D.C., was on the brief, for petitioner.
 Mr. O. D. Ozment, Associate Gen. Counsel, Litigation and Research, Civil Aeronautics Board, with whom Messrs. John H. Wanner, Gen. Counsel, Joseph B. Goldman, Deputy Gen. Counsel, and Robert L. Toomey, Atty., Civil Aeronautics Board, and Richard A. Solomon, Atty., Dept. of Justice, were on the brief, for respondent.
 
 
 1
 Mr. Robert Reed Gray, Washington, D.C., with whom Mr. Joseph J. O'Connell, Jr., Washington, D.C., was on the brief for intervenor Delta Air Lines, Inc., argued for intervenors Delta Air Lines, Inc., Continental Air Lines, Inc., and National Airlines, Inc.
 
 
 2
 Messrs. C. Edward Leasure and Joseph F. Healy, Jr., Washington, D.C., were on the brief for intervenor Continental Air Lines, Inc.
 
 
 3
 Messrs. John W. Cross and Andrew T. A. Macdonald, Washington, D.C., were on the brief for intervenor National Airlines, lines, Inc.
 
 
 4
 Mr. Robert N. Duggan, Washington, D.C., also entered an appearance for intervenor Continental Air Lines, Inc.
 
 
 5
 Mr. R. S. Maurer, Atlanta, Ga., also entered an appearance for Delta Air Lines, Inc.
 
 
 6
 Mr. James H. Bratton, Jr., of the bar of the Supreme Court of Georgia, Atlanta, Fa., pro hac vice, by special leave of court, for intervenor Eastern Air Lines, Inc.
 
 
 7
 Messrs. E. Smythe Gambrell and Harold L. Russell, Atlanta, Ga., were on the brief for intervenor, Eastern Air Lines, Inc.
 
 
 8
 Messrs. Cecil A. Beasley, Jr., and R. J. Shortlidge, Jr., Washington, D.C., were on the brief for intervenors, City of Houston, Texas and Houston Chamber of Commerce.
 
 
 9
 Before EDGERTON, FAHY and WASHINGTON, Circuit Judges.
 
 
 10
 FAHY, Circuit Judge.
 
 
 11
 As the case is finally presented in this court we have for consideration only the petition of Braniff Airways, Inc., for review of orders of the Civil Aeronautics Board of March 13, 1961 and May 26, 1961.[1] These orders were the culmination of a very extensive proceeding before a Hearing Examiner of the Board and later before the Board itself, known as the Southern Transcontinental Service case. It was instituted by the Board in 1958 to reach a determination with respect to new or improved air routes, and the carriers which should operate them, in an area bounded on the east by Georgia and Florida and on the west by California, transversing Alabama, Mississippi, Louisiana, Texas, New Mexico, Arizona and Nevada. One of the problems which was resolved, was the initiation of previously non-existent direct single-carrier transcontinental service in this area, with the elimination of interchanges which had been used to provide this service between the Southeast and the West Coast. Braniff submitted applications which may be generally described as (1) a proposal to provide transcontinental service through the southern tier of states between Florida and California, a Florida-California route, (2) a proposal for regional service between Texas and California, a Texas-West route, and (3) a proposal to provide regional service between principal cities in Texas and points in Florida, a Texas-Florida route.[2]
 
 
 12
 Applicants for these route authorities in competition with Braniff were American Airlines, Continental Air Lines, Delta Air Lines, Eastern Air Lines, National Airlines, Trans World Airlines and Western Air Lines.[3] The Board selected National to provide the transcontinental service between Florida and California, Delta was awarded the transcontinental routing between Alabama/Georgia and California, Continental received the Texas-West regional routing, and Eastern, rather than Braniff as recommended by the Examiner, was granted authority to provide service over the Texas-Florida route. The Board also granted American limited operating rights between Houston-San Antonio and the West Coast.[4]
 
 
 13
 Braniff was granted none of the route authorities for which it applied. Subject to the qualification hereinafter stated we find no basis upon which to set aside the decisions of the Board except its award to Eastern of the Texas-Florida route. As we have said, the Examiner favored Braniff for this route, though not in the exact form granted by the Board to Eastern; that is, he had awarded to Braniff 'a new segment between Fort Worth and the coterminal points Miami and Fort Lauderdale via Dallas, Houston, New Orleans, Tampa, and St. Petersburg-Clearwater,' whereas the Board, while it concurred in the authorization of a new Dallas/Fort Worth-New Orleans-Florida regional route, did not include Houston.
 
 
 14
 Before selecting Eastern the Board eliminated all applicants except Eastern and Braniff as a result of comparative considerations; that is, it eliminated American, Delta and National. As to Eastern and Braniff the Board set forth a short comparative analysis, including the following: 'In terms of quality of service to the public and historic interest in the traffic to be served, we do not find that either Braniff or Eastern has any significant advantage in these respects.' The Board found also that Braniff needed additional long-haul, high-density markets properly to strengthen its competitive position, which was 'a significant factor in Braniff's favor;' but 'in order to properly weigh the applicability of the 'strengthening' factor in this case, we think it is important to consider the overall impact which the present decision will have on both carriers as well as the relative economic position of Eastern in relation to other carriers, such as American, United, and TWA, with whom it must compete.'[5] The Board found that its decision would subject neither Eastern nor Braniff to any sizable diversion of traffic, though Eastern would stand to lose more by diversion. The Board then reached the critical basis for its choice of Eastern for the Florida-Texas route, as follows:
 
 
 15
 'While such diversion, standing alone, would not be crippling, we cannot close our eyes to Eastern's worsening financial position in the industry during the past several years and the probable diversionary impact on the carrier of the announced merger between United and Capital.[58] It is also true that Eastern's
 
 
 16
 '58. See CAB Press Announcement, dated January 31, 1961. While the Board's formal decision approving the proposed United-Capital merger has not as yet been issued, the potential impact on Eastern from such a merger cannot be ignored.'
 
 
 17
 traffic opportunities have been appreciably curtailed during the last five years by the grant of competitive authority in most of Eastern's paying markets, as well as the disappointing lack of growth in the Florida market, one of Eastern's richest markets.
 
 
 18
 'It is the cumulative effect of these many factors and the steadily decreasing opportunities for growth available to one of our larger carriers, whose services are vitally important to a substantial segment of the traveling public, which are of concern to the Board. We are convinced that the competition between carriers required by the Act cannot be preserved if the economic position of any of the trunks, whether classified as a Big Four or a nonmember Big Four, is permitted to deteriorate in relation to the other trunkline carriers with which it is required to compete. Maintaining the strength of Eastern is of substantial importance in our ultimate goal of preventing imbalance in the size of carriers that are expected to compete with each other. Eastern competes in many markets with American, TWA, and United and yet its relative economic position in relation to those carriers is declining. Eastern's profit position has also shown a sharp decline since 1955, a situation which gains added importance in view of the fact that American, one of Eastern's chief competitors in many of its eastern markets, continues to enjoy healthy growth. For these reasons, we find that the selection of Eastern to operate the Dallas/Fort Worth-Florida route would best serve the public interest.
 
 
 19
 Braniff challenges this conclusion. First, it contends that its own situation with respect to the Big Four carriers other than Eastern was not compared with Eastern's situation with respect to those carriers. In its petition for reconsideration, which the Board found did not justify a reversal of its selection of Eastern, Braniff details many factors bearing on this subject. The Board in its brief in this court answers this contention by pointing out, 'the Board's findings concerning Eastern vis-a-vis the other Big Four carriers were not directed to the relative position between Eastern and Braniff. * * * The Board * * * was simply demonstrating Eastern's need vis-a-vis the carriers of its class in much the same fashion that the examiner had done in showing that carriers of Braniff's class needed strengthening. There would have been no point in comparing Braniff and Eastern on this basis.'
 
 
 20
 We think the Board is correct in its position that it was not necessary to compare Braniff with the other Big Four. But this does not solve another problem presented by Braniff. In concluding that Eastern should have the route because of the need to strengthen its relative position with respect to American, United and TWA, we have inadequate findings by which to review the correctness of the Board's decision.[6] The Board states that because of the worsening financial position of Eastern in the industry, the probable diversionary impact upon Eastern of the announced merger between United and Capital, the appreciable curtailment of Eastern's traffic opportunities during the last five years, as well as the disappointing lack of growth in the Florida market, one of Eastern's richest, the public interest required the Texas-Florida route to be awarded to Eastern. We are asked to accept this judgment of the Board, but the basis on which it was reached consists of the conclusionary statements set forth above. These are not the sort of findings which enable us intelligently to pass upon the correctness of the judgment reached.[7]
 
 
 21
 'The agency's findings must * * * be sufficiently definite to enable the courts to perform the task of judicial review. Spiegel v. Public Utilities Commission, 96 U.S.App.D.C. 307, 226 F.2d 29, certiorari denied sub nom. Capital Transit Co. v. Spiegel, 1955, 350 U.S. 904, 76 S.Ct. 182 (100 L.Ed. 794); Beaumont, S.L. & W. Ry. v. United States, 1930, 282 U.S. 74, 86, 51 S.Ct. 1, 75 L.Ed. 221. * * *' Greensboro-High Point Airport Authority v. Civil Aeronautics Bd., 97 U.S.App.D.C. 358, 362, 231 F.2d 517, 521. And see Lake Central Airlines v. Civil Aeronautics Bd., 99 U.S.App.D.C. 226, 229, 239 F.2d 46, 49; Capital Transit Co. v. Public Utilities Comm'n, 93 U.S.App.D.C. 194, 213 F.2d 176, cert. denied, 348 U.S. 816, 75 S.Ct. 25, 99 L.Ed. 643; Saginaw Broadcasting Co. v. Federal Communications Comm'n, 68 App.D.C. 282, 96 F.2d 554, cert. denied, 305 U.S. 613, 59 S.Ct. 72, 83 L.Ed. 391.
 
 
 22
 Where an applicant for a route does not possess the necessary qualifications to provide service little harm ensues from the denial of its application. 'But a choice between two well-qualified applicants necessarily means a substantial economic denial as well as an economic award.' Easton Pub. Co. v. Federal Communications Comm'n, 85 U.S.App.D.C. 33, 36, 175 F.2d 344, 347. The Board not only recognized Braniff's need for route strengthening but found that in terms of quality of service neither Braniff not Eastern has any significant advantage in providing the proposed new service. In this situation the court requires in the interest of fairness that the Board's decision adverse to Braniff be supported in a manner which enables the court to review the correctness of the conclusion reached on the basis of findings, as well as on the adequacy of the record to support the findings. Braniff is denied a route it probably would have obtained except for its competitor's relative position with respect to other carriers, some of which were not applicants. While, of course, the Board's judgment that the public interest requires this may be correct, neither the basis therefor nor for the decision implicitly made that an award of the route to Braniff would not equally well serve the public interest is supported by adequate findings. Cf. Automatic Canteen Co. v. Federal Trade Comm'n, 346 U.S. 61, 81, 73 S.Ct. 1017, 97 L.Ed. 1454; Colorado-Wyoming Gas Co. v. Federal Power Comm'n, 324 U.S. 626, 634-635, 65 S.Ct. 850, 89 L.Ed. 1235.
 
 
 23
 We accordingly set aside the orders of the Board insofar as the Texas-Florida route authority was granted to Eastern, and remand to the Board for further proceedings not inconsistent with this opinion. These further proceedings may include such reopening of other portions of the orders as the Board may deem necessary or desirable in light of our decision with respect to the Texas- Florida route. To avoid disruption of service, the Board may permit existing service and route arrangements to remain in effect pending further proceedings. Greensboro-High Point Airport Authority v. Civil Aeronautics Bd., supra, 97 U.S.App.D.C. at 363, 231 F.2d at 522.
 
 
 24
 It is so ordered.
 
 
 
 [1]
 The petition of American Airlines, Inc., in No. 16378, was dismissed by agreement of the parties on January 31, 1962
 
 
 [2]
 Braniff had also made application for a transcontinental route between Alabama/Georgia and California which, however, was abandoned before the Board
 
 
 [3]
 Other applications which were consolidated in these proceedings but subsequently withdrawn were filed by Capital Airlines, United Air Lines, The Flying Tiger Line, S.S.W., Inc., d/b/a Universal Airlines and California-Eastern
 
 
 [4]
 The Board also reversed the Examiner's award of an additional single-carrier service between Dallas/Fort Worth and Atlanta which he had awarded to Eastern
 
 
 [5]
 Although Eastern is a member of the so-called Big Four, its Board Chairman, Captain Edward V. Rickenbacker, testified that Eastern's competition was primarily with carriers who were not Big Four members
 
 
 [6]
 Section 1005(f) of the Federal Aviation Act requires that 'every order of * * * the Board shall set forth the findings of fact upon which it is based * * *.' 72 Stat. 795 (1958), as amended, 49 U.S.C. 1485(f) (1958), 49 U.S.C.A. 1485(f)
 
 
 [7]
 For example, the degree to which the award of the route to Eastern would affect its competitive position, or the manner in which this would come about, is not made clear. No real analysis is made of the competitive relationship of Eastern to the other members of the Big Four. The Board speaks of the 'worsening financial position' of Eastern, but fails to explain or document its extent. The United-Capital merger is alluded to, but it is not made to appear that the implications of the merger were explored by the Board with any degree of thoroughness. These are, of course, illustrative and are not meant to be a complete list of those areas where supporting findings are lacking. Whether the statements actually made by the Board in this case are called 'conclusions,' 'subsidiary conclusions,' or 'findings' the Board has not been sufficiently detailed and clear to allow an effective judicial review of its orders