The **CITY OF SAN ANTONIO** and the San Antonio Chamber of Commerce, Petitioners,

v.

**CIVIL AERONAUTICS BOARD,**
Respondent.

The **GREATER TAMPA CHAMBER OF COMMERCE,** the City of Tampa, and the County of Hillsborough, Florida, Petitioners,

v.

**CIVIL AERONAUTICS BOARD,**
Respondent.

**STATE OF WISCONSIN,** Petitioner,

v.

**CIVIL AERONAUTICS BOARD,**
Respondent.

**Nos. 20383, 20464, 20500.**

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 5, 1967.

Decided Feb. 7, 1967.

Petition for Rehearing before the Division in No. 20,383 and Petition for Rehearing En Banc in No. 20,500 Denied April 3, 1967.

Mr. Albert F. Beitel, Washington, D. C., with whom Mr. William A. Wildhack, Jr., Washington, D. C., was on the brief, for petitioners in No. 20,383.

Mr. Robert M. Beckman, Washington, D. C., for petitioners in No. 20,464.

Mr. Howard S. Boros, Washington, D. C., for petitioner in No. 20,500. Mr. George F. Sieker, Madison, Wis., was on the brief for petitioner in No. 20,500.

Mr. O. D. Ozment, Deputy General Counsel, Civil Aeronautics Board, with whom Asst. Atty. Gen. Donald F. Turner and Messrs. Joseph B. Goldman, General Counsel, Warren L. Sharfman, Associate General Counsel, Litigation and Legislation, Robert L. Toomey, Assistant Chief, Litigation and Legislation, Civil Aeronautics Board, and Howard E. Shapiro, Attorney, Department of Justice, were on the brief, for respondent.

Before BASTIAN, Senior Circuit Judge, and WRIGHT and McGOWAN, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge:
The Transpacific Route Investigation is a new route proceeding now being

conducted by the Civil Aeronautics Board involving air carrier certification pursuant to Section 401[1] of the Federal Aviation Act covering transportation between the United States mainland and Hawaii and other areas of the Pacific. These appeals challenge certain preliminary orders issued by the Board in that proceeding.

By order dated June 15, 1965, the Board instituted the current[2] Transpacific Route Investigation to examine "the pattern of operations by United States carriers in foreign and overseas air transportation in the Pacific" and to consider and dispose of "applications with respect to such air transportation." By May 25, 1966, over 40 applications for certification from various carriers, including all 11 domestic trunk lines, three all-cargo carriers, and two Pacific Northwest-Alaska carriers, had been received. Also on file at that time were motions from 20 carriers to consolidate for hearing the applications for certification.

On May 25, 1966, the Board issued a consolidation order limiting consideration of non-stop service to the Pacific to 25 mainland cities. The carrier applications as filed had proposed non-stop service to and from a total of 72 mainland cities. In eliminating 47 of these cities from consideration in the current proceeding, the Board used three criteria: size, traffic generating capacity, and geographical location. As stated by the Board: "With minor exceptions necessitated by considerations of geographical balance, the cities selected are in the top 25 cities from the standpoint of population, with metropolitan area populations of 1 million or more, and rank in the top 25 mainland U. S. cities in terms of domestic passengers produced. These are the cities which can, in fact, most realistically be related to foreseeable future service requirements."

Tampa, Florida, and San Antonio, Texas, though in the list of 72 cities found in the applications of the carriers, were not selected for non-stop service consideration in the consolidated proceedings. Petitions for reconsideration of the consolidation order were filed in behalf of these two cities and were denied by the Board. Petitions to intervene in the proceedings were also filed by Tampa and San Antonio, and by the State of Wisconsin in behalf of Milwaukee. These three petitions were denied by the Examiner and that denial was affirmed by the Board. In these appeals this court is asked to review the action of the Board in failing to include Tampa and San Antonio in its consolidation order, and in denying the applications to intervene filed in behalf of Tampa, San Antonio, and Milwaukee.

I

With reference to the consolidation order, petitioners contend that the Board prejudged their transportation needs by failing to include them in the list of the cities to be considered in the current Pacific study. They also maintain that the criteria used by the Board were either illegal *per se* or arbitrarily applied as to them, and that the findings on which the consolidation order is based are inadequate in that they do not comply with the requirements of 5 U.S.C.A. § 557(c) (1966), formerly Section 8(b) of the Administrative Procedure Act, 5 U.S.C. § 1007.[3]

1. 49 U.S.C. § 1371.

2. The prior transpacific study aborted when the President disapproved the Board's recommended "international order." *See* 32 C.A.B. 928, 976–977, 1008–1009 (1961). *See also* Western Air Lines, Inc. v. C.A.B., 122 U.S.App.D.C. 81, 351 F.2d 778 (1965).

3. Tampa also argues that the Board's orders are unclear, suggesting that it is unable to determine from the orders, or

from the Board's explication of them, whether Tampa is "in or out of the case." The point is without merit. In its consolidation order the Board states that "any carrier receiving an award herein may, of course, conduct operations in any manner permissible by combining the new authorization with previously existing authority." As to Tampa this means that, while Tampa will not be considered for non-stop Pacific service in the present

■ No principle of administrative law is more firmly established than that of agency control of its own calendar. Practical problems of calendar administration confront an agency whenever related applications are pending at the same time. Consolidation, scope of the inquiry, and similar questions are housekeeping details addressed to the discretion of the agency and, due process or statutory considerations aside,[4] are no concern of the courts.[5] "Congress plainly intended to leave the Board free to work out application procedures reasonably adapted to fair and orderly administration of its complex responsibilities." Civil Aeronautics Board v. State Airlines, Inc., 338 U.S. 572, 576, 70 S.Ct. 379, 94 L.Ed. 353 (1950). This is precisely what Congress had in mind when, in Section 1001 of the Federal Aviation Act, it granted the Board authority to conduct its "proceedings in such manner as will be conducive to the proper dispatch of business and to the ends of justice." 49 U.S.C. § 1481.

· In this transpacific study the Board was confronted with carriers' applications for non-stop Pacific service from 72 cities. It could have decided to hear the applications one at a time, all at one time, or some now and some later. Neither Tampa nor San Antonio suggests that the applications should have been heard one at a time. The Board decided that to hear them all at one time "could produce a proceeding of virtually unlimited proportions and would seriously delay our reexamination of the transpacific route pattern, a matter which is deemed by the President and the Board to be one of high priority."

■ Having made that judgment, the Board was required to develop criteria for determining which applications would be heard first. The study obviously had to be broad enough to reflect the service needs of the whole country and, at the same time, to discover which mainland cities were best situated to accommodate these needs in the immediate future. The proceeding also had to be kept within manageable limits lest the Board be paralyzed in performing its function. In short, the line between those of the 72 cities which would be considered for non-stop service in the current proceeding and those which would not had to be drawn somewhere. In our judgment the criteria used by the Board in drawing the line were reasonably related to the legitimate end it seeks to achieve.

Among the applicants for certificates there was a sharp divergence of opinion as to where to draw the line—one, for example, suggested that cities with a

proceeding, the carriers now serving Tampa, if successful in their applications for transpacific certificates, may provide Tampa with single-carrier or single-plane service to the Pacific. Thus Tampa's generation of this "beyond" or "back-up" traffic may be considered by the Board in acting on the applications of such carriers. *See* Frontier Airlines, Inc. v. C.A.B., 104 U.S.App.D.C. 78, 259 F.2d 808 (1958).

4. *See, e. g.*, Ashbacker Radio Corp. v. F.C.C., 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108 (1945). *Cf.* Eastern Air Lines, Inc. v. C.A.B., 2 Cir., 271 F.2d 752, 756–757 (1959), *cert. denied*, 362 U.S. 970, 80 S.Ct. 954, 4 L.Ed.2d 901 (1960).

5. "The Board has a basic right to limit the scope of its inquiries," Frontier Airlines, Inc. v. C.A.B., 10 Cir., 349 F.2d 587, 591 (1965), and has done so with the approval of the Supreme Court. C.A.B. v.

State Airlines, Inc., 338 U.S. 572, 70 S.Ct. 379 (1950). *See also* Western Air Lines, Inc. v. C.A.B., 9 Cir., 184 F.2d 545 (1950); United Air Lines, Inc. v. C.A.B., 97 U.S.App.D.C. 42, 228 F.2d 13 (1955); Eastern Air Lines, Inc. v. C.A.B., *supra* Note 4. In F.C.C. v. Pottsville Broadcasting Co., 309 U.S. 134, 138, 60 S.Ct. 437, 84 L.Ed. 656 (1940), the Court stated: "Necessarily, therefore, the subordinate questions of procedure in ascertaining the public interest, when the Commission's licensing authority is invoked—the scope of the inquiry, whether applications should be heard contemporaneously or successively, whether parties should be allowed to intervene in one another's proceedings, and similar questions—were explicitly and by implication left to the Commission's own devising, so long, of course, as it observes the basic requirements designed for the protection of private as well as public interest."

population of 900,000 or more be considered for non-stop service, while another suggested the number be over 2,000,000. The Board set the figure at 1,000,000 for the metropolitan area, but added two additional criteria: domestic traffic generating capacity and geographical location. Using these criteria the Board selected for consideration in the current proceeding 25 cities. Since neither Tampa nor San Antonio had a metropolitan population of 1,000,000 or over, neither was selected.[6]

To the extent that the criteria used by the Board resulted in excluding petitioners from the current Pacific study, the Board did indeed decide that the cities selected for consideration were, at the present time, more likely candidates for non-stop Pacific service. But this decision by no means represents a final judgment by the Board of petitioners' potential as Pacific terminals.[7] That convenience and necessity judgment will be made when applications proposing petitioners for non-stop service are heard by the Board in a later proceeding. Thus whatever prejudgment is implicit in this action by the Board was necessitated by practical management considerations. Under the circumstances we cannot say that the Board acted irrationally or arbitrarily.[8]

Tampa impugns the Board's candor in using the complexity of the case as a reason for limiting the proceedings. Tampa asserts that, even though consideration is limited to 25 cities as non-stop terminals, in making its judgment the Board must in any event consider traffic and benefits to all cities on the applicants' existing domestic routes, including those not designated as potential co-terminals in this proceeding. Thus, Tampa argues, the evidence as to the traffic potential of the cities excluded by the consolidation order will nevertheless be heard, and consequently the proceedings will be just as complex as if these cities had not been excluded.

Tampa is wrong in this suggestion. Only the cities selected for non-stop Pacific service will be tested by the convenience and necessity standard in this proceeding. The numerous economic elements which must be considered in applying this standard and in determining whether a city so needs air service that a carrier shall be required to provide it are quite different from the incidental benefits to other cities along the carriers' domestic routes which may flow from such certification. The certificate of convenience and necessity requires service, whereas Pacific service to "beyond" points on the applicants' existing routes would be discretionary

---

**6.** Although having less than a million in population, Phoenix and Portland were selected for consideration as Pacific terminals because Phoenix is the only substantial air transportation hub in its region and Portland is a traditional gateway for Pacific air transportation. San Diego was not among the first 25 cities in domestic passenger generation (it ranked 28th), but it too is a traditional gateway to the Pacific with particular service ties to Hawaii. Portland ranked 27th in domestic passenger generation. Thus what Phoenix, Portland, and San Diego lacked in meeting other criteria was more than compensated by their geographical positions. Consequently, petitioners do not seriously complain about the inclusion of these three cities in the consolidation order.

**7.** Significantly, petitioners have not asserted that this case is governed by the

principle of Ashbacker Radio Corp. v. F.C.C., *supra* Note 4.

**8.** Mr. Justice Holmes, dissenting, in Louisville Gas & Elec. Co. v. Coleman, 277 U.S. 32, 41, 48 S.Ct. 423, 72 L.Ed. 770 (1928), cited with approval in Addison v. Holly Hill Fruit Products Co., 322 U.S. 607, 611, 64 S.Ct. 1215, 88 L.Ed. 1488 (1944), stated:

"* * * Looked at by itself without regard to the necessity behind it the line or point seems arbitrary. It might as well or nearly as well be a little more to one side or the other. But when it is seen that a line or point there must be, and that there is no mathematical or logical way of fixing it precisely, the decision of the [agency] must be accepted unless we can say that it is very wide of any reasonable mark."

with the applicants. Thus the procedural machinery and evidence required in making a public convenience and necessity judgment are by no means the same as in considering benefits to "beyond" points.

■ Citing 5 U.S.C.A. § 557(c), petitioners also claim inadequacy in the Board's findings. This claim is predicated on the assumption that consolidation orders must contain detailed findings and conclusions similar to those required for adjudicatory decisions on the merits. But preliminary orders are not governed by Section 557(c). Section 557(c) governs the procedure subsequent to hearing and thus applies to substantive decisions on the merits.[9]

The only section of new Title 5, 5 U.S.C.A. §§ 551–576, 701–706, which includes the old Administrative Procedure Act, 5 U.S.C. §§ 1001–1011, that may have some bearing on preliminary rulings such as consolidation orders is Section 555(e), which requires "a brief statement of the grounds for denial" when "a written application, petition, or other request of an interested person made in connection with any agency proceeding" is denied. The Board's consolidation order more than complied with the requirements of Section 555(e). The order made clear that the Board's purpose in consolidation was to avoid unduly complex and protracted proceedings, citing the "high priority" assigned by the President to speedy conclusion of the proceeding. This was sufficient. East-

ern Airlines, Inc. v. C.A.B., 85 U.S.App. D.C. 412, 178 F.2d 726 (1949).

## II

Petitioners' arguments concerning intervention seem to be predicated on the assertion that all persons interested in a proceeding have a right to participate as full parties. There is no such right. The Act merely provides that "any interested person may file with the Board a protest or memorandum of opposition to or in support of the issuance of a certificate." Federal Aviation Act § 401(c), 49 U.S.C. § 1371(c). The Board, of course, may permit intervention, and it has promulgated rules intended to accommodate all third-party interests in this respect. Rule 15(b)[10] provides that the Board may allow intervention as a matter of discretion after considering such things as the nature and extent of the interest of the petitioner, the effect on petitioner's interest of any order which may be entered in the proceeding, the availability of other means whereby the petitioner's interest may be protected, and the extent to which participation of the petitioner will broaden the issue or delay the proceeding.

In this transpacific study the Board decided that all cities to be considered for non-stop Pacific service would be allowed to intervene, whereas other cities, such as petitioners, also interested in the proceeding by reason of being on the existing domestic routes of the applicants, may participate pursuant to Rule 14(b),[11] which allows them to appear at

9. *See,* ATTORNEY GENERAL'S MANUAL ON THE ADMINISTRATIVE PROCEDURE ACT 81 (1947).

10. Rule 15(b), 14 C.F.R. 302.15(b), reads:
"(b) *Considerations relevant to determination of petition to intervene.* In passing upon a petition to intervene, the following factors, among other things, will be considered: (1) The nature of the petitioner's right under the statute to be made a party to the proceeding; (2) the nature and extent of the property, financial or other interest of the petitioner; (3) the effect of the order which may be entered in the proceeding on petitioner's interest; (4)

the availability of other means whereby the petitioner's interest may be protected; (5) the extent to which petitioner's interest will be represented by existing parties; (6) the extent to which petitioner's participation may reasonably be expected to assist in the development of a sound record; and (7) the extent to which participation of the petitioner will broaden the issue or delay the proceeding."

11. Rule 14(b), 14 C.F.R. § 302.14(b), reads:
"(b) *Participation in hearings.* Any person, including any State, subdivision thereof, State aviation commission, or

the hearing and present any evidence which is relevant to the issues. Persons participating under Rule 14(b) may also, with the consent of the Examiner or the Board, cross-examine witnesses. They may present to the Examiner a written statement on the issues involved in the proceeding. Thus, though not parties in the traditional sense, their interests and representations can be brought to the attention of the Examiner and, through the Examiner, to the Board.

The Board quite candidly states in its order denying intervention that petitioners "have an interest in the proceeding and, under other circumstances, would be granted leave by the Board to intervene." Nevertheless the Board found that there were already at least 65 parties to the proceeding, and to allow petitioners and cities similarly situated to intervene would in effect defeat the very purpose of the consolidation order which, of course, was to keep the proceeding within manageable limits. The Board pointed out that, since petitioners were not under consideration for non-stop Pacific service in this proceeding, they were not in competition with the cities selected for consideration.[12] Indeed, the Board suggested that petitioners' interests would lie in furthering the applications of carriers already serving them where a grant of such applications could make possible new single-plane or single-carrier service between petitioners and points in the Pacific by a combination of new transpacific authority and the carriers' existing domestic route authority.

 It is true, of course, that this court has held that a party with a substantial interest in the proceeding has a right to intervene. City of Houston, Tex. v. C.A.B., 115 U.S.App.D.C. 94, 317 F.2d 158 (1963). But a finding of "substantial interest" must be related to a particular proceeding. And a proceeding must be manageable if it is going to be conducted "in such manner as will be conducive to the proper dispatch of business and to the ends of justice." Federal Aviation Act § 1001, 49 U.S.C. § 1481. Consequently, when the number of parties petitioning to intervene in a proceeding is such that allowance of intervention of all may unduly burden the proceeding, more may be required to demonstrate a substantial interest warranting intervention than where no problem of multiplicity of parties is presented. Moreover, as the Board found here, the petitioners "are not peculiarly situated, but have an interest that is shared by virtually all major cities of the United States that are now named as points on the domestic routes of one or more of the air carriers which have applications for transpacific authority consolidated into this proceeding." If petitioners' requests for intervention were granted, similar treatment would be required for hundreds of other cities similarly situated.

 This court has recently announced that an agency "should be accorded broad discretion in establishing and applying rules for * * * public participation, including * * * how many are reasonably required to give the [Board] the assistance it needs in vindicating the public interest." Office of Communication of the United Church of Christ v. F.C.C., 123 U.S.App.D.C. 328, 339–340, 359 F.2d 994, 1005–1006 (1966). There are in this proceeding

other public body, may appear at any hearing, other than in an enforcement proceeding, and present any evidence which is relevant to the issues. With the consent of the Examiner or the Board, if the hearing is held by the Board, such person may also cross-examine witnesses directly. Such persons may also present to the examiner a written statement on the issues involved in the proceeding. Such written state-

ments, or protests or memoranda in opposition or support where permitted by statute, shall be filed and served on all parties prior to the close of the hearing."

12. *Compare* City of Houston, Tex. v. C.A.B., 115 U.S.App.D.C. 94, 317 F.2d 158 (1963); Greensboro-High Point Airport Authority v. C.A.B., 97 U.S.App.D.C. 358, 231 F.2d 517 (1956).

already at least 65 parties,[13] many of whom are cities in various parts of the country. The relevant needs of the geographical areas represented by petitioners, in the Board's judgment, will be fully represented by the parties already participating. This representation, in addition to petitioners' participation through Rule 14(b), should protect the public interest and the interests of petitioners as well. At least the Board has so held, and we find no basis for holding that the Board abused its discretion in this regard or otherwise arbitrarily discriminated against petitioners.

Affirmed.

13. The Board advised us during oral argument that the number now stands at 75.