**NATIONAL AIRLINES, INC.,**
Petitioner,

v.

**CIVIL AERONAUTICS BOARD,**
Respondent,

City of Albuquerque and the Albuquerque Chamber of Commerce, Titusville-Cocoa Airport Authority, Huntsville-Madison Airport Authority, United Air Lines, Inc., Continental Airlines, Inc., Intervenors.

**DELTA AIR LINES, INC., Petitioner,**

v.

**CIVIL AERONAUTICS BOARD,**
Respondent,

Continental Airlines, Inc., United Air Lines, Inc., Intervenors.

Nos. 21373, 21374.

United States Court of Appeals
District of Columbia Circuit.

Feb. 29, 1968.

Messrs. Andrew T. A. Macdonald and F. David Lake, Jr., Washington, D. C.,

were on the pleadings for petitioners in No. 21,373.

Messrs. Richard S. Maurer, Atlanta, Ga., Robert Reed Gray, Washington, D. C., James W. Callison, Atlanta, Ga., and David A. Heymsfeld, Washington, D. C., were on the pleadings for petitioner in No. 21,374.

Messrs. Joseph B. Goldman, General Counsel, and Robert L. Toomey, Attorney, Civil Aeronautics Board, and Howard E. Shapiro, Attorney, Department of Justice, were on the pleadings for respondent. Messrs. O. D. Ozment, Deputy General Counsel, and Warren L. Sharfman, Assistant General Counsel, Civil Aeronautics Board, also entered appearances for respondent.

Mr. Albert F. Beitel, Washington, D. C., was on the pleadings for intervenors City of Albuquerque and the Albuquerque Chamber of Commerce in No. 21,373.

Mr. Craig Mathews, Washington, D. C., was on the pleadings for intervenor Titusville-Cocoa Airport Authority in No. 21,373. Mr. Markham Ball, Washington, D. C., also entered an appearance for intervenor Titusville-Cocoa Airport Authority in No. 21,373.

Mr. Markham Ball, Washington, D. C. was on the pleadings for intervenor Huntsville-Madison Airport Authority in No. 21,373. Mr. Craig Mathews, Washington, D. C., also entered an appearance for intervenor Huntsville-Madison Airport Authority in No. 21,373.

Messrs. William M. Dickson, Chicago, Ill., and James Francis Reilly, Washington, D. C., were on the pleadings for intervenor United Air Lines, Inc.

Messrs. Lee M. Hydeman, Harold E. Mesirow, Chicago, Ill., and C. Edward Leasure, Washington, D. C., were on the pleadings for intervenor Continental Airlines, Inc.

Before FAHY, Senior Circuit Judge, and WRIGHT and LEVENTHAL, Circuit Judges.

PER CURIAM:

Petitioners seek review of several orders of the Civil Aeronautics Board con-

solidating and excluding route applications with a resulting delineation of five comparative proceedings all focusing on service between various points in the South.[1] Contending that the challenged orders constitute an abuse of discretion and deprivation of rights guaranteed under Ashbacker Radio Corporation v. Federal Communications Commission,[2] petitioners sought a stay of the scheduled comparative proceedings pending review by this court. The Board in turn moved that the petitions for review be dismissed on the ground that there had been no denial of *Ashbacker* rights and that judicial intervention would be premature. After oral argument at which the complex factual situation was ably presented, we declined to grant a stay and deferred action on the motion to dismiss. The parties have consented to an expedited determination of the merits, including the motions to dismiss, without further oral argument. The major object of our inquiry is whether the Board has effectively denied petitioners' pending applications the comparative treatment to which they are entitled.[3] For reasons which follow, we do not interfere with the Board's delineation of the several challenged routemaking proceedings.

The principal proceeding in issue is the Southern Tier Competitive Nonstop Investigation (hereafter the "Southern Tier Case") instituted in March 1967.[4] In a 1961 decision, after an investigation embracing issues of service to more than 22 southern cities from Miami to San Francisco, the Board awarded southern transcontinental routes, principally to petitioners National and Delta.[5] The Board instituted the Southern Tier Case in 1967 to evaluate the need for additional services competitive with existing services. The Board pointed out that the transcontinental routes awarded in 1961 were essentially noncompetitive because the southern trunklines were "just emerging into the jet age with the financial equipment problems attendant thereto," and took cognizance of the "spectacular and unparalleled growth and prosperity with ever increasing traffic revenues" that these trunklines have since enjoyed.[6] This court later sanctioned use of this investigation to provide rehearing of the Board's award of a Miami-Dallas route to Eastern Airlines.[7] The Board confined the Southern Tier Case to eighteen markets including various Florida points, New Orleans, Houston, Dallas, Los Angeles, and San Francisco. It rejected requests by petitioners and other airlines, which had filed applications involving service to other southern cities, for consolidation and consideration of these applications in the same proceeding,[8] and chose instead to consider some of the excluded applications in separate proceedings. The Board stated that its object was "to keep the investigation within manageable proportions and to focus on those markets where additional unrestricted authority may be justified."[9] Without prejudice to the introduction of evidence warranting more stringent restrictions, the Board imposed a pretrial restriction pro-

1. The various proceedings are described below. National's objections involve all five; Delta challenges all but the Realignment case, *infra* note 17.

2. 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108 (1945).

3. Delta Air Lines v. Civil Aeronautics Board, 97 U.S.App.D.C. 46, 228 F.2d 17 (1955); *cf.* Pan American-Grace Airways v. Civil Aeronautics Board, 119 U.S.App.D.C. 326, 342 F.2d 905 (1964), *cert. denied,* 380 U.S. 934, 85 S.Ct. 941, 13 L.Ed.2d 821 (1965); Seaboard & Western Airlines v. Civil Aeronautics Board, 86 U.S.App.D.C. 9, 181 F.2d 777 (1949).

4. Order E–24847 (March 10, 1967).

5. *See* Southern Transcontinental Service Case, 33 C.A.B. 701 (1961).

6. Order E–24847, *supra* note 4, at 1.

7. Braniff Airways v. Civil Aeronautics Board, 127 U.S.App.D.C. 399, 414–415, 379 F.2d 453, 468–469 (1967); Braniff Airways v. Civil Aeronautics Board, 113 U.S.App.D.C. 132, 306 F.2d 739 (1962).

8. Orders E–25720 (Sept. 21, 1967); E–25924 (Nov. 3, 1967); E–25925 (Nov. 3, 1967).

9. Order E–24847, *supra* note 4, at 3.

viding that any new authority awarded would be in the form of a new segment rather than an extension of an existing segment. Thus a carrier with Phoenix-Dallas authority might obtain Dallas-Miami authority in the Southern Tier Case. Under the pretrial restriction, this carrier could not then fly from Phoenix to Miami without stopping at Dallas.

One of the separate proceedings is the Dallas/Ft. Worth to Phoenix Nonstop Case (hereafter the "Phoenix Case"), which was instituted to focus on the needs of the local market.[10] That Dallas-Phoenix market is presently served only by American Airlines through stops on longhaul routes. The Board indicated that it will examine the needs of 200 daily local and connecting passengers and "whether competitive authorizations are required in order to provide passengers in the local market with schedules specifically designed for the convenience of local traffic."[11] To this end, the Board imposed a pretrial restriction under which "any authority granted in this proceeding shall be in the form of a separate segment," thereby requiring that all flights operated pursuant to any new authorization would make a stop at each end of the segment. The Board also considered but rejected an application that would have limited the investigation at the outset by incorporating a single-plane restriction east of Dallas and west of Phoenix, on the ground that such a restriction "would unduly and prematurely limit the possibilities for new and improved single-plane service which could result from this proceeding."[12] This decision expressly left open the possibility of imposing any restrictions found necessary in the course of the proceedings to "further assure that the needs of the local market are not subordinated."[13]

The Service to Albuquerque Case (hereafter the "Albuquerque Case") was similarly instituted to investigate the need for additional service between Albuquerque on the one hand, and Dallas, San Francisco, Las Vegas, Los Angeles and Chicago on the other.[14] Each of these markets generates over 100 passengers daily. Continental Airlines is the exclusive carrier serving the Albuquerque-Dallas market, and Trans World Airlines is the exclusive carrier in the other markets. The Board entered the same ruling regarding pretrial restrictions as it did in the Phoenix Case.[15]

The Memphis/Huntsville/Birmingham-Los Angeles Service Investigation (hereafter the "Memphis West Case") will consider the need for new or improved transcontinental service between Tennessee and Alabama points and Los Angeles.[16] That proceeding considers transcontinental markets that are geographically contiguous to the segments in issue in the Southern Tier Case, but is limited by single-plane and turnaround restrictions. Thus, if the Memphis West Case were to result in an award of a Birmingham-Los Angeles route to a carrier with existing Birmingham-Miami authority, that carrier could not combine its routes to provide single-plane service from Los Angeles to Miami via Birmingham.

A fifth proceeding that may have some bearing is the Southern Airways, Inc. Route Realignment Investigation (hereafter the "Realignment Case").[17] In response to a proposal by Southern Airways, a relatively small carrier operating between numerous points in the

---

10. Order E-25173 (May 16, 1967).

11. *Ibid.*

12. Order E-25924 (Nov. 3, 1967). The single-plane restriction, which was proposed by petitioners and others, would prohibit the same plane's flying from Phoenix to Dallas and then on to a point outside the scope of the Phoenix Case.

13. *Id.* at n. 5.

14. Order E-25189 (May 24, 1967). Petitioners raise no objection involving the Albuquerque-Chicago segment.

15. Order E-25925 (Nov. 3, 1967). That is, the Board adopted the new segment restriction but rejected the pretrial single-plane restriction.

16. Order E-25721 (Sept. 21, 1967).

17. Order E-25230 (June 1, 1967).

Southeast, that proceeding was instituted "to make appropriate changes in the carrier's route structure in the interest of eliminating segment duplication and realigning the segments so that they coincide with actual flight routings and the flow of traffic." It also includes the question whether Southern should be granted a new Atlanta-Miami route via Orlando and Tallahassee. National's request that this new route be considered in the Southern Tier Case was denied, and National's application for Miami-Atlanta certification was consolidated into the Realignment Case.[18]

Petitioners' position is essentially that the Board has delineated these five proceedings in a manner which curtails, and may in fact eliminate, petitioners' opportunities to win the routes for which they have filed applications. This will be discussed in more detail but may be identified at this point as a contention that the relegation of their applications to separate proceedings, rather than consolidation into Southern Tier, results in such a splintering of interrelated matters as to constitute a denial of due process and, because other airlines are not similarly trammeled, a denial of a "comparative hearing." Petitioners also object to the Board's exclusion from all of these proceedings of other prominent southern cities, such as El Paso, Tucson and San Antonio, which petitioners have applied to serve.

Inasmuch as these two objections are framed in terms of abuse of discretion and a denial of the comparative hearing required under Ashbacker Radio Corp. v. Federal Communications Commission, *supra* note 2, we turn to a review of those principles before examining petitioners' allegations in detail.

▮▮▮. The *Ashbacker* doctrine requires that where a licensing agency has before it competing applications and the surrounding circumstances indicate that the grant of one would preclude the grant of another, the agency may not hear one application before it hears the other. We have said that this is a rule of substance, not a "mere prescription of form," and we have emphasized that the rule is founded on practicalities.[19] But the concept of a fair comparative hearing is a fluid one. Unless some degree of order is imposed in the first instance there can be no due process for anyone. While we adhere to the principle that "the Board cannot, either intentionally or by the demonstrable effect of an order, avoid * * * the *Ashbacker* doctrine,"[20] we reiterate that the Board must be free to exercise a considerable measure of discretion in defining the scope of air route cases.[21]

The situation now before us amply illustrates the complexities of aspects of air route investigations that are different from telecommunications proceedings. Pre-existing route intricacies render it almost impossible for the Board to tailor its proceedings so as to equalize the advantages and disadvantages with which each applicant enters a comparative proceeding. The maturing and sophisticated route structure and development preclude a simplistic vindication of *Ashbacker* claims. Several years ago the Board determined that a "framework" was needed in which "all major southern transcontinental issues as a whole [could] be determined for the foreseeable future."[22] Today the Board has concluded that a different approach is necessary to insure the orderly development of air transportation in the same geographic area. This conclusion is put forward as

18. Order E–25652 (Sept. 8, 1968).

19. Delta Air Lines v. Civil Aeronautics Board, 97 U.S.App.D.C. 46, 50, 228 F.2d 17, 21 (1955).

20. Delta Air Lines v. Civil Aeronautics Board, 107 U.S.App.D.C. 174, 179, 275 F.2d 632, 637 (1959), *cert. denied*, 362 U.S. 969, 80 S.Ct. 953, 4 L.Ed.2d 900 (1960) (hereafter referred to as "*Second Delta*").

21. *Ibid. See also* Eastern Airlines v. Civil Aeronautics Board, 100 U.S.App. D.C. 184, 186, 243 F.2d 607, 609 (1956).

22. Southern Transcontinental Case, 33 C.A.B. 701, 783 (1961).

a natural consequence of an expanding demand for air service and a growing technology. It is a determination that we feel ill-equipped to upset.[23]

Definition of the scope and priority of proceedings raises many questions that particularly call for agency judgment. As we stated in City of San Antonio v. Civil Aeronautics Board, 126 U.S.App. D.C. 112, 115, 374 F.2d 326, 329 (1967):

> No principle of administrative law is more firmly established than that of agency control of its own calendar. Practical problems of calendar administration confront an agency whenever related applications are pending at the same time. Consolidation, scope of inquiry, and similar questions are housekeeping details addressed to the discretion of the agency and, due process or statutory considerations aside, are no concern of the courts. "Congress plainly intended to leave the Board free to work out application procedures reasonably adapted to fair and orderly administration of its complex responsibilities." Civil Aeronautics Board v. State Airlines, Inc., 338 U.S. 572, 576, 70 S.Ct. 379, 94 L.Ed. 353 (1950). This is precisely what Congress had in mind when, in Section 1001 of the Federal Aviation Act, it granted the Board authority to conduct its "proceedings in such manner as will be conducive to the proper dispatch of business and to the ends of justice." 49 U.S.C. § 1481. [Footnotes omitted.]

■ We find no basis for interjection by this court because of petitioners' claims that the Board's conduct of five limited proceedings, rather than the single consolidated proceeding urged by petitioners, must be set aside as arbitrary and an abuse of discretion. The

Board has given several reasons for this decision. The desirability of keeping cases within manageable 'proportions, aside from *Ashbacker* considerations, is sufficient to justify the Board's action unless that action entails some consequence that can be condemned as inherently arbitrary.[24]

Petitioners say that the Board has arbitrarily excluded from all scheduled proceedings certain prominent southern markets which petitioners have applied to serve. The Southern Tier Case was instituted to examine the need for service competitive with that offered by petitioners on their transcontinental routes. The Board declined to include such cities as San Antonio, El Paso and Tucson because these cities do not lie along transcontinental routes. Consolidation of issues of service to these cities would start a chain reaction resulting in a massive investigation that would encompass the needs of many other markets. In *City of San Antonio, supra,* we stressed that the determination of which communities are to be included in a route proceeding, *Ashbacker* considerations aside, is particularly within the Board's discretion. We think the Board has set forth a rational basis for confining the Southern Tier Case to the markets presently in issue.

■ Turning to the hearings ordered as to points that are not on transcontinental routes, can we consider whether there was error and prejudice when the Board began an investigation into service to Albuquerque and Phoenix and failed to begin a comparable investigation of service to San Antonio? This court does not have jurisdiction to consider the propriety of the Board's investigation of service to City A before it investigates City B unless there is a substantial claim

---

23. *See* JAFFE, JUDICIAL CONTROL OF ADMINISTRATIVE ACTION 444–446 (1965); DAVIS, ADMINISTRATIVE LAW TREATISE § 8.12 (1958); Note, Comparative Hearing for Air Route Authorizations: Transplanting The Ashbacker Doctrine, 40 N.Y. U.L.REV. 928 (1965).; Note, The Ashbacker Doctrine and Proceedings Before the Civil Aeronautics Board, 46 GEO.L.J. 282 (1957–1958).

24. We find no basis for concluding at this stage of the administrative proceedings that the Board has carved out "enclaves of competition" so narrow as to foreclose full inquiry into public interest questions. *Cf.* Midwestern Gas Transmission Co. v. Federal Power Commission, 103 U.S. App.D.C. 360, 258 F.2d 660 (1958), *vacated as moot,* 358 U.S. 280, 79 S.Ct. 316, 3 L.Ed.2d 299 (1959).

that this procedural determination is a final order in effect because it operates as a determination of rights. We do not assume such jurisdiction except in some instances of an *Ashbacker* claim, which we consider below. Any different approach would install this court as the continuing administrator of air route proceedings, contrary to the congressional vesting of this function in the Civil Aeronautics Board.

We now turn to petitioners' contentions that the Board's orders work a deprivation of *Ashbacker* rights. It would prolong this opinion beyond manageable proportions if we were to set forth all of petitioners' sundry contentions. We shall consider a couple of specific points as advanced by petitioners, since their disposition serves, we think, to dispose of other specific contentions.

Petitioners claim that the exclusion of San Antonio, Tucson and El Paso from any of the scheduled proceedings deprives them of *Ashbacker* rights because petitioners have applied for transcontinental routes with intermediate stops at these excluded cities. American Airlines, for example, presently serves these excluded cities on routes extending from Houston and Dallas to the West Coast. By acquiring Miami-Houston and Dallas authority in Southern Tier, American would have a transcontinental route that would, say petitioners, economically exclude the applications petitioners have filed for similar authority.

We think this situation is analogous to that in Eastern Airlines, Inc. v. Civil Aeronautics Board.[25] There Northwest applied for Detroit-Miami rights which Eastern already had, and the Board scheduled this service for investigation. Eastern sought expansion of this hearing to include its application for Detroit-West Coast rights already held by Northwest. Eastern contended that this was required by *Ashbacker* since a grant to Northwest would *de facto* give it West Coast-Detroit-Miami rights, and that if Eastern were not then given an opportunity to attain the same transcontinental route by completing its missing segment, it could not as an economic matter justify a second carrier on that route. We held that Eastern could not, in the name of *Ashbacker*, extend a geographically limited investigation "into a massive consideration of the whole of American air transportation." [26]

Petitioners also raise *Ashbacker* objections to the Board's refusal to consolidate the pending proceedings. Delta points out, for example, that American Airlines, which presently has Phoenix-Dallas authority, can attain Phoenix-Dallas-Miami rights simply by winning Dallas-Miami authority in Southern Tier. To attain the same result, Delta must win Dallas-Miami authority in Southern Tier and also Phoenix-Dallas authority in the Phoenix Case. Petitioners cite several other such illustrations. Spelling them out would be time-consuming, for they are complicated and of no assistance to understanding and analysis, except to say that National's problems seem even more formidable than Delta's due to National's Houston-Dallas "gap" which has already been before this court.[27]

*Ashbacker* does not necessarily require the Board to enlarge a proceeding to include abutting segments or prohibit the Board from considering in a separate proceeding an area that borders on, or even lies wholly within, the area covered in another proceeding. It may be that simultaneous investigation of contiguous areas does violate *Ashbacker,* but that depends on the considerations adduced by the Board in making its award. Thus, in *Second Delta, supra* note 20, this court held that the Board violated *Ashbacker* by its award to TWA of a route between St. Louis and the Southeast. The court ruled that this gave TWA a California-Florida route and, in effect, disposed of Delta's application for a

25. 100 U.S.App.D.C. 184, 243 F.2d 607 (1957).

26. *Id.* at 186, 243 F.2d at 609.

27. National Airlines v. Civil Aeronautics Board, 101 U.S.App.D.C. 345, 249 F.2d 13 (1957).

California-Florida route which was under investigation in the still pending Southern Transcontinental Case. *Second Delta,* however, did not turn on the mere fact of simultaneous contiguous investigations. Our holding there was determined by the point that the Board's considerations in awarding TWA the St. Louis-Florida route were the same as those applicable to the award of a transcontinental route from California to Florida. What was ostensibly an area investigation became in fact a transcontinental investigation. "After the Board had restricted the case to area considerations and had proceeded to the end on that basis, it could not, in that same case, make a transcontinental award."[28]

The crux of petitioners' contentions is that the Albuquerque and Phoenix Cases are not truly independent investigations but merely extensions of the Southern Tier Case. On oral argument the Board urged that the jet age has rendered an "area-type" investigation obsolete. As we pointed out in *Second Delta,* whether a case is a true area investigation depends upon the criteria used by the Board in awarding routes. We there discussed at length the considerations relevant to a true area investigation and we see no need to reiterate those principles here. We merely point out that the Board proceedings have not yet reached the stage where we can determine that the pending investigations are not properly limited as the Board has done. Such a determination must await the final award of routes.

We assume the Board is fully aware of *Ashbacker*'s fundamental rule of fairness. The Board has stressed that its delineation of the several proceedings was for the purpose of defining the scope of these proceedings and "not, of course, in derogation of the right of any party to submit appropriate evidence or argument to establish a need for more or different restrictions to be applied to any authorizations we may issue or to show there is mutual exclusivity which we have not foreseen." In view of this and other as-

surances that the Board is not unmindful of *Ashbacker* rights or the criteria of a true area proceeding which we outlined in *Second Delta,* we find no basis for interfering with the pending proceedings as they are presently defined.

 Since we cannot at this stage ascertain that there has been an effective deprivation of petitioners' rights, we conclude that the challenged orders are not final. Accordingly, we dismiss the petitions for lack of jurisdiction.

So ordered.

---

28. 107 U.S.App.D.C. at 183, 275 F.2d at 641.